UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAMON C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**DECISION AND ORDER**

1:24-CV-00900 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Damon C. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons explained below, Plaintiff's motion (Dkt. 10) is granted, the Commissioner's motion (Dkt. 13) is denied, and the matter is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed his application for SSI on September 20, 2021. (Dkt. 3 at 63).[1] In his application, Plaintiff alleged disability beginning on May 2, 2018, due to lumbar spine injury, bulging disc, right hip groin tear, thoracic disc herniations, right hip issues, and high blood pressure. (*Id.* at 65). Plaintiff's application was initially denied on March 1, 2022. (*Id.* at 101-04). A telephone hearing was held before administrative law judge ("ALJ") William M. Weir on September 29, 2023. (*Id.* at 42-62). On November 16, 2023, the ALJ issued a partially favorable decision, concluding that Plaintiff was disabled between September 20, 2021, through February 22, 2023, but that on February 23, 2023, medical improvement occurred resulting in Plaintiff being able to perform substantial gainful work activity. (*Id.* at 18-36). Plaintiff requested Appeals Council review; his request was denied on July 29, 2024, making the Commissioner's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

When the ALJ finds a claimant disabled at any point, the ALJ then must follow an additional seven-step process for Title XVI claims. *See* 20 C.F.R. § 416.994. At step one, the ALJ is required to consider whether the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the

claimant has such an impairment, then the claimant's disability will be found to continue. *Id.* § 416.994(b)(5)(i). If the claimant does not suffer from such an impairment, then step two is that the ALJ is required to determine whether any medical improvement has occurred. *Id.* § 416.994(b)(5)(ii).

If there has been medical improvement, then at step three the ALJ determines whether it is related to the claimant's ability to do work, *i.e.* whether there has been an increase in the claimant's RFC, based on the impairment that was present at the time of the most recent favorable medical determination. *Id.* § 416.994(b)(5)(iii). If this step reveals no medical improvement or if the ALJ concludes at step three that the improvement was unrelated to the claimant's ability to work, then per step four the ALJ is required to consider whether any specified exceptions apply. *Id.* § 416.994(b)(5)(iv).

If, however, medical improvement related to the ability to work is shown, then at step five the ALJ determines whether all the claimant's impairments in combination are severe. *Id.* § 416.994(b)(5)(v). If the impairments are found to be severe, then at step six the ALJ is required to assess the claimant's RFC based on all current impairments and determine whether the claimant can perform past relevant work. *Id.* § 416.994(b)(5)(vi).

Finally, if the claimant is unable to perform his or her past relevant work, then step seven requires the ALJ to determine whether the claimant can perform "any other work," giving consideration to claimant's age, education, and past work experience. *Id.* § 416.994(b)(5)(vii). If the claimant can do other work, then disability will be found to have ended. *Id.*

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 20, 2021, the alleged onset date. (Dkt. 3 at 25).

At step two, the ALJ found that, from September 20, 2021, through February 22, 2023, Plaintiff suffered from the severe impairments of: "degenerative joint disease of the bilateral hips, status post reconstructive surgery of a major weight bearing joint; disorder of the skeletal spine; and obesity." (*Id.* at 26). The ALJ further found that Plaintiff's medically determinable impairment of hypertension was non-severe. (*Id.*).

At step three, the ALJ found that, from September 20, 2021, through February 22, 2023, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).

Before proceeding to step four, the ALJ determined that, from September 20, 2021, through February 22, 2023, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except Plaintiff:

> is unable to independently ambulate during an eight-hour workday. Additionally, when the claimant must ambulate, he requires the use of bilateral canes or a walker. The claimant can never climb ladders, ropes, scaffolds, ramps, or stairs.

(*Id.*). At step four, the ALJ found that, from September 20, 2021, through February 22, 2023, Plaintiff was unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.* at 31). Accordingly, the ALJ found that Plaintiff was under a disability as defined in the Act, from September 20, 2021, through February 22, 2023. (*Id.* at 31).

Continuing with the additional analysis required in closed disability cases, the ALJ determined that Plaintiff had the same severe impairments that he did during the period from September 20, 2021, through February 22, 2023, and that he had not developed any new severe impairments since February 23, 2023, the date his disability ended. (*Id.* at 32). The ALJ also found that beginning on February 23, 2023, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).

In the next step, the ALJ concluded that medical improvement occurred as of February 23, 2023, the date Plaintiff's disability ended, and that it was related to Plaintiff's ability to work because there had been an increase in Plaintiff's RFC. (*Id.* at 32-33).

The ALJ proceeded to the next step and concluded that beginning on February 23, 2023, Plaintiff had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 416.967(a). (*Id*. at 33). While the ALJ concluded that Plaintiff was still unable to perform his past relevant work, the ALJ further concluded that beginning on February 23, 2023, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 35). Accordingly, the ALJ concluded that Plaintiff's disability ended on February 23, 2023, and he has not become disabled again since that date. (*Id*. at 36).

## II. Remand of this Matter for Further Proceedings is Necessary.

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ's finding of medical improvement was not supported by substantial evidence, the ALJ relied on stale opinion evidence, and the ALJ based the RFC finding on his lay opinion. (Dkt. 10-1 at 1, 14-24). Specifically, Plaintiff argues that the ALJ's finding of medical improvement is not supported because the ALJ failed to account for Plaintiff's ongoing right hip pain despite surgery and the limitations associated with Plaintiff's left hip pain, which persisted beyond February 22, 2023, and also that the ALJ relied on stale opinion evidence. (*Id*. at 14-24; *see also* Dkt. 14).

In response, the Commissioner argues that the record supports the ALJ's finding of medical improvement, and Plaintiff improperly seeks a reweighing of the evidence favorable to him. (Dkt. 13-1 at 3-10). For the reasons explained below, remand of this matter for further administrative proceedings is required.

### A. Medical Improvement Standard

Under the medical improvement standard, the Commissioner "may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *De Leon v. Sec'y of Health & Hum. Servs.*, 734 F.2d 930, 936 (2d Cir. 1984). The regulations provide that medical improvement is "any decrease in the medical severity of [] impairment(s) . . . present at the

time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i); *see also Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) ("[I]n order to 'determin[e] whether medical improvement has occurred,' the SSA must compare 'the current medical severity of th[e] impairment[ ] . . . to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision." (citing 20 C.F.R. § 404.1594(b)(7))). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 416.994(b)(1)(i). "In closed-period disability cases like this one . . . the ALJ compares the current severity of the claimant's condition with the severity at the time when the claimant was last found to be disabled." *Dereje H. v. Comm'r of Soc. Sec.*, No. 19-CV-6514-LJV, 2021 WL 722438, at *2 (W.D.N.Y. Feb. 24, 2021).

If medical improvement has occurred, the regulations instruct the ALJ to compare the claimant's RFC to do basic work activities based on the previously existing impairments with the claimant's prior RFC to determine whether the medical improvement was related to the claimant's work capacity. 20 C.F.R. § 416.994(b)(5)(iii). "Medical improvement is related to [a claimant's] ability to work if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities. . . ." *Id.* § 416.994(b)(1)(iii). Where medical improvement related to a claimant's ability to work has occurred, the Commissioner "must also show that [the claimant is] currently able to engage in substantial gainful activity before [finding the claimant is] no longer

disabled." *Id.* § 416.994(b). "The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence." *Dereje H*., 2021 WL 722438 at *2.

The burden is on the Commissioner to show, by substantial evidence, that a medical improvement has occurred. *DeJesus v. Comm'r of Soc. Sec.*, No. 12-CV-2251 (ANJ)(HBP), 2014 WL 5040874, at *12 (S.D.N.Y. Sept. 29, 2014); *see also Denise C. v. Kijakazi*, No. 3:23-CV-052 (ATB), 2023 WL 6065949, at *3 (N.D.N.Y. Sept. 18, 2023) ("Paramount to the medical improvement standard is the presumption that when the agency finds a claimant disabled, that disability will continue. Furthermore, unlike cases involving the five-step sequential analysis, the burden is with the agency to prove that the claimant no longer is disabled." (quotations and citations omitted)); *Abrams v. Astrue*, No. 06 Civ. 0689 (JTC), 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 11, 2008) (the Commissioner has "the burden of persuasion to demonstrate medical improvement").

### B. Lack of Substantial Evidence Supporting Finding of Medical Improvement Related to Plaintiff's Ability to Work

Plaintiff was injured in a motor vehicle accident in 2018, after which his right hip and lower back pain worsened over time. (Dkt. 3 at 27). Plaintiff underwent a total right hip replacement in December 2021, and continued treatment with his orthopedist and physical therapy. (*Id*. at 27-28). The ALJ noted that "during this period at issue, the claimant's activities of living were significantly reduced. After surgery, the claimant testified to using a walker, wheelchair, or bilateral canes for ambulation. The claimant also testified that he used a motorized scooter at the store to shop. Additionally, the claimant

testified to getting significant help from his fiancée, including help with dressing, and getting his legs in and out of the shower." (*See generally*, Dkt. 3 at 29-30).

The ALJ thereafter noted that on February 23, 2023, Plaintiff experienced medical improvement to the point that he could perform sedentary work. The ALJ explained that on February 22, 2023, Plaintiff saw his orthopedic surgeon for a follow-up appointment, at which time Plaintiff "noted improvement in his right hip" and denied any new injury. (*Id.* at 33). Plaintiff also reported pain in his left hip and had an abnormal gait, but Plaintiff did not require the use of a walker, wheelchair, or bilateral canes or crutches to ambulate. (*Id.*). A right hip x-ray from that appointment revealed a right total hip replacement in adequate alignment without evidence of loosening or subsidence and no fracture or dislocation. (*Id.*). Plaintiff's range of motion in his right hip showed improvement from prior appointments, and he had only mildly decreased strength at the right hip. Plaintiff's hip "appeared normal," and the surgical incision was healing well. (*Id.*). The ALJ further noted Plaintiff's appointment with his primary care provider in May 2023, from which treatment notes indicated that Plaintiff had a "generally intact" functional capacity, was capable of self-care, could walk around his house and outside on level ground, and could do light chores. (*Id.*). The ALJ acknowledged that Plaintiff continued to report left hip pain, and a March 2023 left hip and pelvis x-ray showed left femoral head avascular necrosis with articular surface collapse and a superimposed moderate degree of osteoarthritis, while the right hip "showed no hardware complications." (*Id.*). The ALJ

further noted that Plaintiff underwent a total left hip arthroplasty in June 2023, and there were no follow-up or physical therapy records in the record. (*Id.*). The ALJ concluded:

> Overall, the record does not support the claimant's alleged symptom severity beginning February 23, 2023. Orthopedic treatment notes indicate that the claimant noted improvement with his right hip. Orthopedic examination findings from this appointment indicate that the claimant's right hip had an improved range of motion, only mildly reduced strength, intact sensation, and normal coordination. The claimant underwent a left hip replacement in June 2023, but there is no evidence to support the same recovery difficulties that the claimant experienced with his right hip replacement. The claimant reported some wound care issues at the left hip, but otherwise denied any significant and ongoing post-operative symptoms. Additionally, the claimant testified that he drives, helps care for his daughter, goes to the store about one block from his house, and prepares simple meals.

(*Id*. at 34).

The Court has reviewed the record and concludes that the ALJ's determination of medical improvement is not supported by substantial evidence. The ALJ found that Plaintiff experienced medical improvement, relying on a treatment note from February 22, 2023. (*See* Dkt. 4 at 481). The treatment note reflects a visit with Graham R. Huckell, M.D. While Plaintiff noted "improvement" in his right hip, the treatment note also states that Plaintiff continued to walk with single cane, was experiencing considerable pain in his left hip, and he had an abnormal gait. (*Id.*). Plaintiff reported right hip pain as "aching and throbbing in character," rated his pain to be a 6.5 out of 10, and noted that the pain was made worse by standing and taking long walks, but was better with rest. (*Id.*). Imaging from that date demonstrated that Plaintiff's right hip was post-surgery with adequate alignment, but the left hip had avascular necrosis with flattening of the formal head. (*Id.*

at 483). Dr. Huckell noted that Plaintiff remained temporarily disabled in regard to his right hip. (*Id*. at 484).

It is not clear why the ALJ used the February 23, 2023 treatment note as the cutoff date for Plaintiff's closed period of disability. While the treatment note states that Plaintiff apparently reported some improvement at this visit, it also described that Plaintiff continued to feel pain in his right hip, he was unable to walk normally, and he had developed pain in his left hip—which eventually required surgery in June 2023. Treatment notes from after the February 23, 2023 date also suggest that Plaintiff did not experience medical improvement, but rather that Plaintiff had deteriorating hip pain that required surgery. (*See, e.g.*, Dkt. 6 at 235-36 (treatment note from Mark Anders, M.D., dated March 9, 2023, noting that Plaintiff had "progressive left hip osteoarthritis [with] increasing pain," Plaintiff walked with a cane, he had decreased range of motion of the left hip with pain "at extremes and with rotation," and pain with weightbearing, he was assessed with progressive left hip femoral head collapses with probable avascular necrosis, and noting that Plaintiff remained temporarily disabled); *id*. at 233-34 (treatment note from Dr. Anders dated June 15, 2023, for follow-up on left hip surgery, noting that Plaintiff had a hematoma over the incision site, he was at risk for falls, and that Plaintiff remained "totally disabled"); *id*. at 231-32 (treatment note from Dr. Anders dated June 22, 2023, noting that Plaintiff's pain level was at 7/10, he was ambulating with a cane, he had a significant hematoma, which was drained, and that Plaintiff remained totally disabled)). Here, the only medical opinion evidence the ALJ discussed in support of the conclusion that Plaintiff had the RFC to perform sedentary work starting in February 2023, was medical opinion evidence from

2022 (*see* Dkt. 3 at 34-35 (discussing February 2022 opinion from John Schwab, D.O., February 2022 opinion from J. Koenig. M.D., and August 2022 opinion from Gregory Zito, M.D.))—opinion evidence that was offered well before Plaintiff apparently experienced a medical improvement in February 2023 that affected his RFC.

Following his left hip surgery, Plaintiff had swelling in his left hip (Dkt. 6 at 245), and at his administrative hearing, he testified that he could not sit or stand for long periods of time (and in fact, he had recently attempted to work as a cab driver, but was unable to do so because of the pain he experienced when sitting), he was still experiencing pain in his left hip following the recent surgery, and he used a walker, a wheelchair, and two canes to walk (Dkt. 3 at 47, 49). Given this evidence, it is not clear to the Court, and the ALJ has failed to articulate, how Plaintiff experienced medical improvement in February 2023; rather, the record reflects that after that time, Plaintiff continued to experience right hip pain and also that pain in left hip was exacerbated to the point of requiring surgery.

The ALJ notes in the written determination that following Plaintiff's left hip surgery in June 2023, "there are no follow-up or physical therapy records . . . contained in the record." (*Id*. at 33). The problem with this reasoning is that the administrative hearing was held in September 2023, only a few months following Plaintiff's left hip surgery, and presumably a robust record had not yet been developed. While it is initially Plaintiff's burden to demonstrate disability during the five-step sequential evaluation, the burden of demonstrating medical improvement falls on the Commissioner, who must show substantial evidence that Plaintiff is no longer disabled. The ALJ's reliance on the lack of

medical records to make this finding—particularly during a period where Plaintiff underwent a second hip surgery—is not sufficient.

In the same vein, in the absence of medical records following Plaintiff's left hip surgery, the ALJ could have developed the record by obtaining additional medical opinion evidence to assess Plaintiff's functioning following his left hip surgery. But the ALJ did not take any such action. Rather, in determining Plaintiff's RFC post-February 23, 2023, the ALJ relied on the same 2022 medical assessments he relied on in finding that Plaintiff was disabled. Notably, those medical opinions were offered in early 2022, before Plaintiff's development of left hip necrosis and the resulting surgery. While reliance on medical opinion evidence prior to a surgery does not always result in the opinion being deemed stale, the Court finds in this instance the ALJ's reliance on these same medical opinions to conclude that Plaintiff regained the ability to work is problematic. *See, e.g.*, *Denise C.*, 2023 WL 6065949, at *11 (where the medical opinions of record, including those from state agency medical experts, the consultative examiner, and treating providers, were prepared during the period of plaintiff's disability, "[i]t does not logically follow that these opinions constitute substantial evidence of the post-medical-improvement RFC," and concluding that "in reaching the conclusion that plaintiff no longer suffered from such limitations, the ALJ relied on her own lay judgment to evaluate the medical records and determine that plaintiff's medical improvement increased her functional capacity"); *Quineila B. v. Kijakazi*, No. 3:21cv768 (MPS), 2022 WL 2604593, at *5 (D. Conn. July 8,

2022) ("The second error is that the RFC for the period of medical improvement is not supported by any medical opinion or other adequate evidence.").

In short, the ALJ's distinction between the two time periods to support a finding of non-disability beginning on February 23, 2023, is not adequately explained in the decision or supported by the record, and consequently, raises an appearance of cherry-picking. *See Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022) (improper for the ALJ to cherry-pick instances of plaintiff's normal mental status examinations "[b]ecause a pattern of relative calm punctuated by manic episodes was consistent with Dr. Mirza's diagnosis of unspecified bipolar disorder. . . ."); *see also Quineila B.*, 2022 WL 2604593, at *4 (remanding due to lack of support for medical improvement, holding that "because the ALJ did not provide an explanation or identify any specific objective evidence to support her conclusion that the non-exertional limitations she previously found in the RFC had changed, the Court cannot discern the ALJ's rationale").

For those reasons, remand of this matter for further administrative proceedings is required. On remand, the ALJ shall further explain his conclusion for why Plaintiff was no longer disabled as of February 23, 2023, including by developing the record with respect to Plaintiff's functioning following his left hip surgery.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative

proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2026
Rochester, New York